IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROXANNE MICHELE MATHAI,<br>Plaintiff, | §<br>§<br>§<br>§<br>§<br>§ | |
| vs. | §<br>§<br>§<br>§ | CIVIL ACTION NO. 5:22-cv-01355 |
| BEXAR COUNTY, TEXAS; and<br>JAVIER SALAZAR, INDIVIDUALLY,<br>Defendants. | §<br>§<br>§<br>§ | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW PLAINTIFF ROXANNE MICHELE MATHAI, by and through her

undersigned counsel of record and, in accordance with the Federal Rules of Civil Procedures,

files this, her Original Complaint against BEXAR COUNTY, TEXAS and JAVIER SALAZAR,

INDIVIDUALLY.  For cause of action, Ms. Mathai would show unto the Court as follows:

## I.
## PARTIES

1.      Plaintiff Roxanne Michele Mathai ("Ms. Mathai") is a female citizen of the

United States and Texas resident residing at 14200 Vance Jackson, #20202, San Antonio, Texas

78249.

2.      Defendant Bexar County, Texas ("Bexar County") is a political subdivision of the

State of Texas organized under Article 9 of the Texas Constitution that lies within the Western

District of Texas.  Bexar County may be served with process by serving its County Judge, the

Honorable Nelson W. Wolff, at 100 Dolorosa, San Antonio, Bexar County, Texas 78205, or wherever he may be found.

3.      Defendant Javier Salazar ("Salazar") is the Sheriff of Bexar County, the conservator of the peace and executive officer of the county and district courts within the Western District of Texas.  Salazar may be served with process at 200 North Comal Street, San Antonio, Bexar County, Texas 78207, or wherever he may be found.

## II.
## JURISDICTION

4.      Ms. Mathai asserts claims against Defendants for violations of her constitutional and civil rights as guaranteed by the United States Constitution and 42 U.S.C. § 1983, thereby invoking the jurisdiction conferred upon this Court.

## III.
## VENUE

5.      Because the acts and omissions forming the basis of this suit occurred in Bexar County, Texas, venue is proper in the San Antonio Division of the Western District of Texas pursuant 28 U.S.C. § 1391(b).

## IV.
## STATEMENT OF FACTS

6.      Whenever, in this pleading, it is alleged that any Defendant or its/his officers, agents, servants, employees or representatives, including Salazar, engaged in any act or omission resulting in a constitutional or common law tort, it is meant that any such officers, agents, servants, employees or representatives, including Salazar, engaged in such objectively unreasonable acts or omissions with the actual or constructive knowledge that such act or omission was, in fact, a constitutional or common law tort.

7.      Whenever, in this pleading, it is alleged that any Defendant or its/his officers, agents, servants, employees or representatives, including Salazar, engaged in any act or omission resulting in a constitutional or common law tort, it is meant that such officers, agents, servants, employees, representatives, including Salazar, engaged in such objectively unreasonable acts and omissions jointly and severally with the full authorization or ratification of each other Defendant or its/his officers, agents, servants, employees or representatives, including Salazar.

8.      Whenever, in this pleading, it is alleged that any Defendant or its/his officers, agents, servants, employees, or representatives, including Salazar, engaged in any act or omission resulting in a constitutional or common law tort, it is meant that such officers, agents, servants, employees representatives engaged in such objectively unreasonable acts and omissions in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees, or representatives, including Salazar.

9.      Whenever, in this pleading, it is alleged that any Defendant or its/his officers, agents, servants, employees or representatives, including Salazar, engaged in any act or omission resulting in a constitutional or common law tort, it is meant that such officers, agents, servants, employees representatives engaged in such objectively unreasonable acts and omissions, in whole or in part and that same were the proximate result of a failure to train and/or a failure to supervise subordinates rising to the level of a deliberate indifference to Ms. Mathai's civil and constitutional rights.

10.     Whenever, in this pleading, it is alleged that any Defendant or its/his officers, agents, servants, employees, or representatives, including Salazar, engaged in any act or omission resulting in a constitutional or common law tort, it is meant that such officers, agents, servants, employees representatives engaged in such objectively unreasonable acts and omissions

3

while on notice of fair and clear warning that their acts or omissions violated Ms. Mathai's clearly established rights.

11.    Ms. Mathai incorporates by reference all exhibits annexed hereto as if fully set forth herein.

12.    At the time Defendants wrongfully discharged her, Ms. Mathai had attained the rank of Lieutenant with nine years of dedicated and outstanding service as a Texas County Jailer[1] working under the supervisions of Salazar.  Ms. Mathai is not now and has never been commissioned as a Texas peace officer, as that position is defined by Texas law.[2]  At all times during her employment, she served Bexar County, under the final policymaking authority of Salazar, in the Detention Division, often as a "shift commander."

13.    Ms. Mathai is an ardent and passionate supporter of President Donald J. Trump and his "Make America Great" ("MAGA") political movement.  She has regularly and repeatedly made public statements in support of him and MAGA on social media platforms such as Facebook.  She has worn t-shirts and other apparel illustrating her support of President Trump and MAGA.  Ms. Mathai's support of President Trump was well-known by Salazar and within the Bexar County Sheriff's Office.

14.    On January 3, 2021, Ms. Mathai sent a text to Assistant Chief Deputy Janssen ("Chief Jansen") seeking permission to travel Washington, D.C. to attend a political rally in support of President Trump.  Chief Janssen granted the permission.  Ms. Mathai departed by airplane on Tuesday, January 5, 2021, joined friends and other supporters of President Trump, checked in to the Hotel Lombardy, attended President Trump's political rally in Washington, D.C. on January 6, 2021, and returned to San Antonio on Friday, January 8, 2021.

---

[1] See TEX.OCC.CODE §1701.001(2); see also TEX.GOV'T CODE §85.005.
[2] See TEX.OCC.CODE §1701.001(4); see also TEX.CODE OF CRIM. PROC., Art. 2.12.

15.     While in Washington D.C. and during the political rally in support of President Trump, Ms. Mathai toured the monuments and landmarks of D.C. and gathered in solidarity with other supporters of President Trump.  On the morning of January 6, 2021, Ms. Mathai, along with friends Jemicia and Ashley, arrived at Ellipse Park between 7:00 and 8:00 a.m. EST to see President Trump speak.  Although the temperature was between 12- and 19-degrees Fahrenheit, Ms. Mathai was dressed in patriotic and pro-President Trump clothing and enjoyed being a tourist in Washington D.C.  Surrounded by throngs of enthusiastic supporters, Ms. Mathai eagerly watched President Trump speak on the jumbotrons that were placed within and around Ellipse Park.  At approximately 1:30 pm EST, Ms. Mathai toured the immediate vicinity, photographed, and recorded statues, landmarks, Christmas trees, and other attendees.  Many supporters of President Trump displayed Old Glory, sang patriotic songs, and chanted "U-S-A" in support of President Trump.

16.     Believing she was a witness to history and wanting to create a record for posterity, she began posting photographs, videos, and comments on social media, including her personal Facebook page, in political support of and in association with President Trump.[3]  Ms. Mathai also began walking the approximate two-mile distance from Ellipse Park to the United States Capitol Building with her friends and continued to post photos, videos, and comments on Facebook.  Ms. Mathai proudly and unapologetically voiced and displayed her lawful and constitutionally protected support of President Trump in person and through social media.  She arrived at the outskirts of the United States Capitol Building complex and enjoyed the sights and sounds of the rally.  Standing on the street, sidewalk, and on the grassy lawn area outside the United States Capitol Building complex, Ms. Mathai continued to take photos and record videos of her experiences.

---

[3] See Exhibit 1, photographs, videos, and Facebook page content.

17.     At approximately 3:00 p.m. Eastern Time, Ms. Mathai and her friends began the long walk back to their hotel.  Once back at Hotel Lombardy, Ms. Mathai watched news coverage on television showing protesters climbing walls, jumping fences, and breaking into the United States Capitol Building.  She was shocked and appalled at what appeared on screen to be rioters vandalizing the United States Capitol Building.  As a law-abiding citizen with the intent of attending a peaceful rally, Ms. Mathai would never approve or condone such law-breaking. She was horrified at what she saw.

18.     At no time during her visit to Washington D.C. or during the political rally in support of President Trump did Ms. Ms. Mathai ever enter the United States Capitol Building. She always remained on spaces open to the public such as streets, sidewalks, and lawns.  She never rioted, never confronted, or assaulted any law enforcement personnel, never jumped, or skirted any barriers blocking entrance to government building, never entered a government building including the Capitol, never destroyed or defaced any property, and never engaged in any actions that posed risk or danger to any other person.  Further, Ms. Mathai never personally witnessed any persons engaging in such behavior.

19.     As the elected Sheriff of Bexar County, Salazar's, primary duties are to act as the conservator of the peace and the executive officer of the county and district courts, serve writs and processes of the courts, seize property after judgment, enforce traffic laws on county roads and supervise the county jails and prisoners.  A registered Democrat, Salazar, however, has displayed a history of rabid partisanship and has included biased and retaliatory political calculations into his executive and supervisory decisions.  He has demonstrated full-throated contempt for Pres. Trump and his supporters.  Upon information and belief, Salazar and Bexar County learned of Ms. Mathai's political speech and association on January 7, 2021, by

surveilling and monitoring her personal Facebook page.  Salazar was prepared to take swift, arbitrary, and capricious action against any employee showing support for Pres. Trump.

20.    In the day after rioting erupted at the United States Capitol, Salazar, before investigating any facts, branded Ms. Mathai a criminal guilty of rioting, destroying federal property, and endangering human life.  He further concluded that Ms. Mathai, while on her own personal vacation time, was derelict in her duty to report crimes he accused her of witnessing directly to him.  Salazar commenced Internal Affairs Investigation, No. IA2021-0003, into Ms. Mathai and, on January 8, 2021, authorized the issuance of a Notification of Allegations to Ms. Mathai for the following alleged disciplinary rule violations of his policies:  5.24 Conduct Unbecoming an Officer; 5.44 Violations of Law; 5.45 Bringing Discredit; 6.11 Reporting Crimes; 6.12 Reporting Incidents; 6.16 Reporting Non-Compliance; and 37.07 Social Media Scope.[4]

21.    On January 29, 2021, Lt. E. Colbert, Badge #206, and Internal Affairs Commander, issued a Garrity Warning to Ms. Mathai and interrogated her about Salazar's allegations against her.  Ms. Mathai categorically denied that she engaged in any criminal conduct or violated any of Salazar's policies.  Ms. Mathai provided complete and honest answers to all questions asked and otherwise fully cooperated with the investigation.  Lt. Colbert prepared a Written Report for Administrative Investigation on January 29, 2021, and delivered it to Salazar.[5]

22.    On May 28, 2021, Salazar issued his Order of Dismissal to Ms. Mathai, officially discharging her from employment.[6]  Salazar concluded that, because of her participation in a political rally in support of President Trump, Ms. Mathai violated statutes, Civil Service Rules,

---

[4] See Exhibit 2, Salazar's Internal Affairs Division, Notification of Allegations, dated January 8, 2021.
[5] See Exhibit 3, Salazar's Written Report for Administrative Investigation, dated January 29, 2021.
[6] See Exhibit 4, Salazar's Order of Dismissal, dated May 28, 2021.

and Commission Rules, engaged in conduct proven detrimental or adverse to Salazar and his office, engaged in conduct unbecoming an officer, brought discredit to him, failed to report crimes, failed to report incidents, failed to report non-compliance, and violated his Social Media Scope. Salazar based his Order of Dismissal on the false allegation that Ms. Mathai participated in a "riot," engaged in impermissible free speech and political commentary on social media platforms that Salazar despised and failed to report a crime directly to him.

23.     Based upon his own prejudices and retaliatory motives, he accused Ms. Mathai of gloating over the destruction of property and loss of life. Ms. Mathai, on the other hand, had no contemporaneous knowledge of what occurred inside the Capitol Building. Without confirming any facts, he accused Ms. Mathai of participating in an "unlawful assembly," and supporting efforts "to hunt down and lynch members of Congress." Although Ms. Mathai never participated in any illegal activity, Salazar said, "I believe anybody that stayed and cheered it on and encouraged and watched without reporting is an active participant." Salazar discharged Ms. Mathai for no other reason than in retaliation for exercising her First Amendment right to free speech and free association.

24.     A Texas law enforcement agency is required, by law, to deliver notice to the Texas Commission on Law Enforcement ("TCOLE") designating the separation of a license holder as either "honorably discharged," as a "general discharge," or as "dishonorably discharged."[7] The designation has a material and significant impact on a license holder's credentials, status, reputation, and ability to obtain subsequent employment. On August 30, 2021, Roland P. Schuler, III ("Schuler"), Salazar's Chief of Staff, issued a Separation of Licensee (Form F-5) to the Texas Commission on Law Enforcement declaring that Salazar had

---

[7] See TEX.OCC.CODE §1701.452.

"Dishonorably Discharged" Ms. Mathai because of criminal misconduct, insubordination, or untruthfulness connected to her participation in the January 6, 2021 rally in support of President Trump.[8]    Salazar expanded his contrived reasons for discharging Ms. Mathai to include "criminal misconduct," "insubordination," and "untruthfulness."  Although Schuler indicated he delivered the F-5 to Ms. Mathai via certified mail on September 10, 2021, Ms. Mathai never received it, was unaware of Salazar's accusations contained in the F-5 and was unable to file an appeal before the applicable deadline.  Salazar's "dishonorable discharge" designation was a scarlet letter that categorically stigmatized Ms. Mathai designed to prevent her from securing future employment.  Despite many subsequent attempts to find comparable employment, no jail facility would hire her.  Defendants' retaliatory reprisals chilled Ms. Mathai's desire to speak on matters of public concern such as politics and elections and intimidated her into virtual silence.

25.    Firmly convinced she violated no law or policy, Ms. Mathai, on March 10, 2022, submitted a Petition to Correct Separation of Licensee Report to the State Office of Administrative Hearings ("SOAH") to order that Salazar amend the F-5 to reflect an Honorable Discharge because she separated employment in good standing.[9]  In the alternative, Ms. Mathai petitioned SOAH to order that Salazar amend the F-5 to reflect a General Discharge.  Either designation would, first, be truthful and, second, improve her ability to find alternate employment.

26.    On June 28, 2022, SOAH held a hearing in which Salazar and Ms. Mathai, through counsel, argued and offered evidence in support of their respective positions.  The Texas Occupation Code holds that Salazar had the burden of proof, by a preponderance of the evidence,

---

[8] See Exhibit 5, Salazar's Separation of Licensee (F-5), dated August 30, 2021.
[9] See Exhibit 6, Ms. Mathai's Petition to Correct Separation of Licensee Report, dated March 10, 2022.

to show that the alleged misconduct occurred.[10]  Salazar stubbornly insisted that Ms. Mathai engaged in criminal misconduct, insubordination, or untruthfulness.   During the hearing, however, his lawyer agreed that a "General Discharge" was appropriate and offered to revise the F-5 and moot the hearing.  Ms. Mathai, however, invoked her right to a full hearing and the presentation of evidence, including witness testimony.[11]  The testimony established that there existed no evidence showing that Ms. Mathai had engaged in any "criminal misconduct," "insubordination," or "untruthfulness," or that she was the subject of any law enforcement investigation.

27.    On August 26, 2022, Administrative Law Judge Katerina DeAngelo issued a Decision and Order finding, *inter alia*, that "[Salazar] did not establish misconduct occurred which would support a dishonorable discharge. . . Therefore, Petitioner's F-5 Report should be changed to reflect a general discharge."[12]  Judge DeAngelo overturned Salazar's decision, ordered him to retract the false designation, and to issue a correct designation based on facts. The record shows that Salazar engaged in a clear pattern of making false accusations against Ms. Mathai, that he offered unsupported rumor and innuendo against her, and that he attempted to destroy her reputation.

28.    Upon information and belief, Salazar, as a "final policymaker" who possessed final, unreviewable discretion to make decisions or act for Bexar County, expressly directed that his subordinate employees unjustifiably retaliate and discharge Ms. Mathai because of her frequent and public exercise of her right to free speech, free assembly, and free association.

29.    Upon information and belief, Salazar, as a "final policymaker" who possessed final, unreviewable discretion to make decisions or act for Bexar County, failed to properly train

---

[10] See TEX.OCC.CODE §1701.4525(e); 37 TEX.ADMIN.CODE §§217.8(d) – (e).
[11] See Exhibit 7, SOAH Docket No. 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.F5 Hearing transcript, dated June 28, 2022.
[12] See Exhibit 8, Decision and Order, SOAH Docket No. 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, dated August 26, 2022.

and/or supervise his subordinate employees, including the duty to treat all employees and citizens equally under the law without retaliation because of their free speech activities.

30.    Salazar, under color of state law, promulgated a widespread set of unconstitutional policies, ordinances, regulations, customs, usages, or decisions that were the moving force behind Ms. Mathai's constitutional injuries.  As Bexar County Sheriff, Salazar is the final policymaker for equal employment opportunity decisions, including the decision to retaliate against and discharge Ms. Mathai.  Salazar engaged in an intentional, deliberate decision that rose to a conscious disregard for a high risk of unconstitutional conduct that gives rise to municipal liability.

31.    Salazar, actually and constructively, approved customs, policy statements, ordinances, regulations, or decisions that endorsed and approved a widespread and covert scheme to deprive Ms. Mathai of her constitutional rights.

## V.
## - COUNT ONE -
## VIOLATIONS OF THE FIRST AMENDMENT OF UNITED STATES CONSTITUTION

A.    <u>Violations of the First Amendment of the United States Constitution</u>

32.    The contentions of fact made in the "Statement of Facts" of this pleading are incorporated by reference into Count One as if fully set forth herein.

33.    By and through this Original Complaint, Ms. Mathai pleads that Defendants maintain a pattern and practice of depriving employees, including her, of their rights secured by the First Amendment to the United States Constitution.

34.    By and through this Original Complaint, Ms. Mathai further pleads that Defendants retaliated against her in violation of the First Amendment to the United States Constitution because she engaged in free speech regarding matters of public concern and because

she assembled and/or associated with others for the purpose of expressing her political views. Upon information and belief, Defendants' retaliatory acts caused her to suffer an injury that would otherwise chill a person of ordinary firmness from continuing to engage in protected activity. Defendants were substantially motivated to retaliate against Ms. Mathai because she exercised her constitutionally protected free speech rights.

**VI.**
**- COUNT TWO -**
**VIOLATIONS OF THE FOURTEENTH AMENDMENT**
**OF UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**
**RETALIATORY DISCHARGE BECAUSE OF FREE SPEECH AND ASSOCIATION**

35.    The contentions of fact made in the "Statement of Facts" of this pleading are incorporated by reference into Count Two as if fully set forth herein.

36.    By and through her Original Complaint, Ms. Mathai pleads that Defendants, under color of statute, ordinance, regulation, custom, or usage, subjected, or caused to be subjected, Ms. Mathai to the deprivation of her rights, privileges, and immunities secured by the United States Constitution and laws. Ms. Mathai pleads that Defendants, acting under color of state law and in concert, violated her civil rights by when they retaliated against and discharged her because of her free speech and association.

37.    By and through her Original Complaint, Ms. Mathai pleads that Defendants have deprived her of liberty and property in retaliation for her free speech and free association.

38.    By and through her Original Complaint, Ms. Mathai further pleads that Defendants, through their employees, agents, and representatives, implemented and enforced a custom, policy statement, ordinance, regulation, or decision that deprived her of her civil rights and employment. Ms. Mathai pleads that Defendants, acting under color of state law and in

concert, violated her civil rights by when they retaliated against and discharged her because of her free speech and association.

39.     By and through her Original Complaint, and pleading in the alternative, Ms. Mathai pleads that Defendants maintained a persistent, widespread practice by officials and employees that, although not authorized by officially adopted and promulgated policy, was so common and well settled that it constituted a custom and fairly represented municipal policy and that such persistent, widespread practice deprived them of her civil rights.  Defendants, by operation of a persistent, widespread practice by officials and employees that, although not authorized by officially adopted and promulgated policy, was so common and well settled that it constituted a custom and fairly represented municipal policy, that permits, tolerates, and encourages the suppression and stigmatization of free speech, free association, and reprisal based upon purely personal animus.

**VIII.**
**COUNT THREE -**
**VIOLATIONS OF THE FOURTEENTH AMENDMENT**
**OF UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**
**VIOLATIONS OF LIBERTY INTEREST IN EMPLOYMENT**

40.     The contentions of fact made in the "Statement of Facts" of this pleading are incorporated by reference into Count Three as if fully set forth herein.

41.     By and through her Original Complaint, Ms. Mathai further pleads that Defendants, through their employees, agents, and representatives, implemented and enforced a custom, policy statement, ordinance, regulation, or decision that deprived her of her liberty interests and freedom to work and earn a living.  Ms. Mathai pleads that Defendants, acting under color of state law, violated her liberty interests and freedom to work because of their improper discharge process, their publication of false charges made against her in connection

with her employment, and their denial of a meaningful hearing to clear her name, she was constitutionally stigmatized.

42.    By and through her Original Complaint, Ms. Mathai pleads that Defendants have deprived her of liberty and property without due process of law.

43.    By and through her Original Complaint, Ms. Mathai further pleads that Defendants, through their employees, agents, and representatives, implemented and enforced a custom, policy statement, ordinance, regulation, or decision that deprived her of her liberty interests and freedom to work and earn a living.  Ms. Mathai pleads that Defendants, acting under color of state law and in concert, violated her civil rights by when they retaliated against and discharged her because of her free speech and association.

44.    By and through her Original Complaint, and in pleading in the alternative, Ms. Mathai pleads that Defendants maintained a persistent, widespread practice by officials and employees that, although not authorized by officially adopted and promulgated policy, was so common and well settled that it constituted a custom and fairly represented municipal policy and that such persistent, widespread practice deprived them of her civil rights.  Defendants, by operation of a persistent, widespread practice by officials and employees that, although not authorized by officially adopted and promulgated policy, was so common and well settled that it constituted a custom and fairly represented municipal policy, that permits, tolerates, and encourages the suppression and stigmatization of free speech, free association, and reprisal based upon purely personal animus.

45.    By and through her Original Complaint, and pleading in the alternative, Ms. Mathai pleads that Defendants maintained a persistent, widespread practice by officials, including Salazar as "final policymaker," or employees that, although not authorized by

14

officially adopted and promulgated policy, was so common and well settled that it constituted a custom and fairly represented municipal policy and that such persistent, widespread practice deprived her of her civil rights. Defendants, by operation of a persistent, widespread practice by officials including Salazar as "final policymaker," or employees that, although not authorized by officially adopted and promulgated policy, was so common and well settled that it constituted a custom and fairly represented municipal policy, that permits, tolerates, and encourages the suppression and stigmatization of free speech, free association, and reprisal based upon purely personal animus without probable cause.

46.    Salazar is Bexar County's "final policy maker in the area of law enforcement." Acting under color of state law and pursuant to her role as final policy maker, Salazar intentionally, maliciously, and/or with deliberate indifference established and officially adopted and/or failed to adopt certain policy statements, ordinances, regulations, and/or decisions (collectively "policies") and/or intentionally, maliciously, and/or with deliberate indifference established and officially adopted and/or failed to adopt certain customs which were persistent and widespread in the Bexar County Sheriff's Department, each of which was a moving force behind and a proximate and substantial cause of the violation of Ms. Mathai's constitutional rights.

47.    Pleading in the alternative, Ms. Mathai pleads Bexar County and Salazar, as a final policy maker, failed to train, failed to supervise, and failed to discipline employees, agents, and representatives and that such failures constituted a deliberate indifference to Ms. Mathai's rights. Considering the duties assigned to specific officers or employees, the need for more or different training was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the Salazar, as the final policymaker, can be reasonably said to have

been deliberately indifferent to the need.  Under these circumstances, Salazar's failure to provide

proper training fairly represented a policy for which Bexar County, Texas is responsible.

## IX.
## DAMAGES

48.      By and through her Original Complaint, Ms. Mathai pleads that Defendants have

proximately caused her grievous harm and extensive damages.  As a direct and proximate result

of its violations of federal law, Defendants has caused Mr. Campos to suffer in amounts within

the jurisdictional limits of this Court.

49.      By and through her Original Complaint, Ms. Mathai pleads that Defendants have

caused her to suffer acute mental anguish and severe emotional distress including, but not limited

to, intense feelings of fear, depression, anxiety, worry, apprehension, severe humiliation,

belittlement, shame, uncontrollable panic attacks, loss of sleep, loss of appetite, and alienation of

affection from her family and friends.  Ms. Mathai will continue to suffer these damages into the

foreseeable future.

50.      By and through her Original Complaint, Ms. Mathai pleads that Defendants have

caused her to suffer lost back wages, lost future wages, and loss of other valuable employment

benefits such as insurance and retirement benefits.  Ms. Mathai will continue to suffer these

losses into the foreseeable future.

51.      By and through her Original Complaint, Ms. Mathai pleads that Salazar's

conduct, when viewed objectively from his standpoint at the time of occurrence, involved an

extreme degree of risk, considering the probability and magnitude of the potential harm to others,

including Ms. Mathai.

# X.
# PRAYER

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF ROXANNE MICHELE MATHAI requests that the above matters be submitted to a jury of her peers, and that upon trial, judgment be entered as follows:

a. Compensatory damages including mental anguish, severe emotional distress, and loss of reputation in an amount to be fixed upon inquest.

b. Lost past, present and future wages, and lost employment benefits, in an amount to be fixed upon inquest.

c. Special damages, in an amount to be fixed upon inquest.

d. Exemplary and punitive damages against Salazar, in an amount to be determined upon inquest.

e. Pre-judgment and post-judgment interest, at the maximum rate permitted by law.

f. Reasonable and necessary attorney's fees.

g. All taxable costs of court expended in this lawsuit; and

h. Such other and further legal relief, either at law or equity, to which Ms. Mathai may be justly entitled.

MS. MATHAI HEREBY REQUESTS TRIAL BY JURY.

Respectfully submitted,

SÁNCHEZ & WILSON, P.L.L.C.
MARK ANTHONY SÁNCHEZ, ESQ.
6243 IH-10 West, Suite 1025
San Antonio, Texas 78201
(210) 222-8899
(210) 222-9526 (TELECOPIER)
E-MAIL ADDRESS: mas@sanchezwilson.com
WEB SITE: www.sanchezwilson.com
ATTORNEYS FOR PLAINTIFF

By: /s/ Mark Anthony Sánchez
        MARK ANTHONY SÁNCHEZ, ESQ.

17

TEXAS STATE BAR NO. 00795857

<u>NOTICE OF ELECTRONIC FILING</u>

     The undersigned counsel hereby certifies that he has electronically submitted for filing a true and correct copy of the above and foregoing in accordance with the Electronic Case Files System of the Western District of Texas on the <u>19th</u> day of December 2022.


          /s/ Mark Anthony Sánchez
          MARK ANTHONY SANCHEZ, ESQ.