<div style="text-align: right">
CONFIDENTIAL
Pursuant to Tex. Occ.
Code § 1701.454
</div>

SOAH Docket No. 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                    Suffix: F5

# BEFORE THE
# STATE OFFICE OF ADMINISTRATIVE
# HEARINGS

ROXANNE MATHAI,
PETITIONER
v.
BEXAR COUNTY SHERIFF'S OFFICE,
RESPONDENT

## DECISION AND ORDER

Roxanne Mathai (Petitioner) separated from employment with the Bexar County Sheriff's Office (Sheriff's Office) on June 11, 2021. Sheriff's Office filed an F-5 Report of Separation of Licensee (F-5 Report) with the Texas Commission on Law Enforcement (TCOLE) designating Petitioner's separation as a dishonorable discharge. Petitioner disputes the designation and contends that it should be amended to reflect a designation of an honorable discharge or, in the alternative, a general discharge. After considering the evidence and arguments, the

Exhibit 8

<div style="text-align: right">
**CONFIDENTIAL**
Pursuant to Tex. Occ.
Code § 1701.454
</div>

Administrative Law Judge (ALJ) finds that Sheriff's Office has not established that Petitioner's separation was properly classified as a dishonorable discharge. The ALJ finds that the F-5 Report should be changed to reflect that Petitioner's separation was a general discharge.

## I.  NOTICE, JURISDICTION, AND PROCEDURAL HISTORY

A hearing was held by videoconference on June 28, 2022, before ALJ Katerina DeAngelo of the State Office of Administrative Hearings (SOAH). Petitioner appeared and was represented by attorney Mark Anthony Sanchez. Sheriff's Office was represented by the assistant criminal district attorney Susan A. Bowen. The record closed on August 9, 2022, to allow for the parties to file written closing briefs. There are no contested issues of jurisdiction or notice in this case; therefore, these matters are addressed in the findings of fact and conclusions of law.

## II.  APPLICABLE LAW

The head of a law enforcement agency is required to file an F-5 Report with TCOLE after a licensee's employment ends for any reason.[1] The F-5 Report must state whether the licensee was honorably discharged, generally discharged, or

---

[1] Tex. Occ. Code § 1701.452(a).

CONFIDENTIAL
Pursuant to Tex. Occ.
Code § 1701.454

dishonorably discharged.[2] The terms "honorably discharged," "generally discharged," and "dishonorably discharged" are defined as follows:

(1) "Honorably discharged" means a license holder who, while in good standing and not because of pending or final disciplinary actions or a documented performance problem, retired, resigned, or separated from employment with or died while employed by a law enforcement agency.

(2) "Generally discharged" means a license holder who:

(A) was terminated by, retired or resigned from, or died while in the employ of a law enforcement agency and the separation was related to a disciplinary investigation of conduct that is not included in the definition of dishonorably discharged; or

(B) was terminated by or retired or resigned from a law enforcement agency and the separation was for a documented performance problem and was not because of a reduction in workforce or an at-will employment decision.

(3) "Dishonorably discharged" means a license holder who:

(A) was terminated by a law enforcement agency or retired or resigned in lieu of termination by the agency in relation to allegations of criminal misconduct; or

---

[2] Tex. Occ. Code § 1701.452(b).

> CONFIDENTIAL
> Pursuant to Tex. Occ.
> Code § 1701.454

  (B) was terminated by a law enforcement agency or retired or resigned in lieu of termination by the agency for insubordination or untruthfulness.[3]

A licensee may contest the information contained in an F-5 Report by submitting a written petition for correction to both TCOLE and the law enforcement agency. Upon receipt of the petition, TCOLE is required to refer the matter directly to SOAH for a contested case hearing under the Administrative Procedure Act.[4] At the hearing, the chief administrative officer of the law enforcement agency has the burden of proof, by a preponderance of the evidence, to show that the alleged misconduct occurred.[5] Following the hearing, the ALJ issues a final order on the petition.[6] If the alleged misconduct is not supported by a preponderance of the evidence, the ALJ is required to order the F-5 Report be changed.[7]

## III. DISCUSSION

The facts of this case are largely undisputed. In 2021, Petitioner faced disciplinary action (including possible termination) on two occasions. First, Petitioner was suspended for violations of Sheriff's Office's policies and procedures, including the untruthfulness policy, in relation to Petitioner's failure to

---

[3] Tex. Occ. Code §§ 1701.452(b)(1)-(3).

[4] Tex. Occ. Code §§ 1701.4525(a), (d).

[5] Tex. Occ. Code § 1701.4525(e); 37 Tex. Admin. Code §§ 217.8(d)-(e).

[6] 37 Tex. Admin. Code § 217.8(d).

[7] Tex. Occ. Code § 1701.4525(e); 37 Tex. Admin. Code § 217.8(e).

immediately report her relationship with an inmate to her supervisor in October 2020.[8] Second, Petitioner was terminated in relation to Petitioner's participation in a political rally in Washington, D.C., that occurred on January 6, 2021.[9] The rally evolved into a riot with a group of protesters entering the U.S. Capitol and bypassing law enforcement and barriers, which resulted in the destruction of federal property, endangering the public safety, and leading to loss of life.[10] Petitioner posted photographs and videos of rioters climbing the walls of the U.S. Capitol building on her personal Facebook page.[11] Petitioner did not enter the U.S. Capitol building.[12] Her termination on June 11, 2021, was for violations of the Bexar County Sheriff's Civil Service Commission's rules (Civil Service Rules) and Sheriff's Office's policies and procedures (Policy).[13] Petitioner appealed the termination and, on August 25-26, 2021, the parties participated in arbitration.

### A.   Arbitrator's Decision and Award

The arbitrator found that, even if Petitioner was:

"… duped into believing this rally was really a patriotic gesture or a protest to manner in which the election was conducted or even a last tribute to President Trump by his loyal supporters, [Petitioner] knew or should have known she was observing illegal activity (trespass, barricades down, people climbing walls and scaffolding); that tear gas

---

[8] Pet. Ex. 11; Resp. Ex. 5.

[9] Resp. Ex. 4.

[10] Resp. Ex. 4.

[11] Pet. Ex. 9; Resp. Ex. 4.

[12] Petitioner testified she stayed on the lawn of the U.S. Capitol.

[13] Respondent Exhibit 4 contains the Order of Dismissal. The order referenced specific rules and policies Petitioner found to be violated but did not reference any allegation of criminal misconduct or untruthfulness.

CONFIDENTIAL
Pursuant to Tex. Occ.
Code § 1701.454

in the area and later a curfew were signs of trouble; that her social media would disseminate her pictures, video and comments to the public; and, that as an officer with the Bexar County Sheriff's Office the last place she should be or remain or come back to was the scene of this so-called "rally."[14]

The arbitrator upheld the termination and found that Petitioner's participation in the rally, Facebook posts, and failure to report any of the events that took place at the rally were in violation of Policy 5.24 (Conduct Unbecoming an Officer); 5.45 (Bringing Discredit); 6.11 (Reporting Crimes); 6.12 (Reporting Incidents); 6.16 (Reporting Non-Compliance); and 37.07 (Social Media Scope); as well as Civil Service Rules 9.02.M (Violation of any statute, Civil Service rule, regulation or Commission order) and 9.02.P (Conduct which has proven to be detrimental or has an adverse effect on the Sheriff's Office).[15]

## B.   THE F-5 REPORT

The F-5 Report reflects that Petitioner began employment with Sheriff's Office on August 27, 2012, and separated from employment on June 11, 2021. On the F-5 Report, Petitioner's separation was designated as a dishonorable discharge. In her petition to correct the F-5 Report, Petitioner requested a designation of an honorable discharge.[16]

---

[14] Resp. Ex. 1 at 18.

[15] Resp. Ex. 1 at 18-19.

[16] At the hearing and in her closing brief, Petitioner stated that, in the alternative, she would accept a general discharge designation.

<div style="text-align: right; border: 1px solid black; display: inline-block; padding: 4px;">
CONFIDENTIAL<br>
Pursuant to Tex. Occ.<br>
Code § 1701.454
</div>

### C. Sheriff's Office's Evidence

At the hearing, Sheriff's Office had five exhibits admitted into evidence[17] and presented testimony from Captain Aaron Von Maldau.

Captain Von Maldau testified that the dishonorable discharge designation on the F-5 Report was selected because Petitioner brought discredit to Sheriff's Office and "potentially" committed criminal conduct, like criminal trespass, during the rally.[18] According to Captain Von Maldau, although Petitioner did not participate in the insurrection as far as "storming the building," she was in a place "where she should not have been."[19] Captain Von Maldau admitted that Petitioner was not terminated for any specific criminal conduct.

Captain Von Maldau testified that Sheriff's Office initiated an internal affairs (IA) investigation into Petitioner's participation in the rally[20] and reported it to the Federal Bureau of Investigation (FBI). Captain Von Maldau was not aware if the FBI was investigating Petitioner, or if any charges were filed against her. The IA investigation found no violations of law and no engagement in criminal conduct

---

[17] Resp. Exs. 1-5.

[18] Captain Von Maldau testified that the Federal Bureau of Investigation has been investigating all acts of insurrection, including criminal trespass, that occurred during the rally and that they have a 5-year statute of limitation to file charges.

[19] Captain Von Maldau stated that Petitioner's photographs showed that she was past the law enforcement barriers. Petitioner testified that she did not bypass the law enforcement barriers.

[20] Petitioner Exhibit 4 contains a copy of the Administrative Investigation Report. Captain Von Mandau testified that an IA investigation is an administrative investigation of alleged violations of rules and policies, and not of criminal misconduct.

CONFIDENTIAL
Pursuant to Tex. Occ.
Code § 1701.454

and sustained violations of Policy 5.24, 5.45, 6.11, 6.12, 6.16, and 37.07, and Civil Service Rules 9.02.M and 9.02.P.[21]

Captain Von Maldau further testified that the dishonorable discharge designation on the F-5 Report was also selected because Petitioner was already under discipline for untruthfulness.[22] Captain Von Maldau admitted that Petitioner's Order of Dismissal contained the reasons for her employment termination and that it did not reference the incident of untruthfulness. According to Captain Von Maldau, Sheriff's Office investigated each incident separately but then aggregated it for a totality of circumstances in making a separation designation.

### D.  Petitioner's Evidence

At the hearing, Petitioner testified on her own behalf and had five exhibits admitted into evidence.[23]

Petitioner was employed as a detention lieutenant at Sheriff's Office. She testified that she was on administrative leave when she attended the rally and did not participate in the riot, break any laws, or observe any crimes.[24] She was never

---

[21] Pet. Ex. 4 at Bates 0039-0040.

[22] Captain Von Maldau was not familiar with the details of the incident. Petitioner's Exhibit 11 and Respondent's Exhibit 5 contain the Agreed Order of Suspension, dated June 2, 2021, which cited Petitioner's violations of several rules and policies, including dishonesty and untruthfulness.

[23] Pet. Exs. 4, 8, 9, 11, 12.

[24] Petitioner testified that she observed people climbing the walls of the U.S. Capitol, but she did not believe it was illegal. She did not see any doors or windows of the U.S. Capitol from where she was standing.

> **CONFIDENTIAL**
> Pursuant to Tex. Occ.
> Code § 1701.454

detained or questioned in relation to any potential violations of laws. Petitioner testified about the Agreed Order of Suspension. She did not admit to any of the violations cited in the order, including untruthfulness, and stated that she signed the order to settle the matter. Her understanding was that Sheriff's Office would not further pursue any claim of untruthfulness for the October 2020 incident.[25]

## IV. ANALYSIS

The F-5 Report reflects that Petitioner was dishonorably discharged. Pursuant to Texas Occupations Code section 1701.4525(e), the ALJ must determine if the alleged misconduct occurred. If the ALJ finds the allegation proven, the dishonorable discharge will be upheld. If she does not, then the separation will be reclassified.

### A. ALLEGED CRIMINAL MISCONDUCT

Both the Order of Dismissal and testimony showed that Petitioner's employment termination was a result of her participation in the rally, and not because of the October 2020 incident, involving untruthfulness, which was ultimately resolved in the Agreed Order of Suspension.[26] Therefore, the ALJ finds

---

[25] The Agreed Order of Suspension stated that any repeat action (or lack of action) which "resulted in this suspension, may result in future progressive disciplinary action, which may include dismissal . . ." Pet. Ex. 11; Resp. Ex. 5.

[26] Petitioner's Exbibit 8 at Bates 0162 contains an email from Sheriff Javier Salazar to the Sheriff's Office Media Services confirming that Petitioner was issued a suspension for the untruthfulness incident and an order of dismissal for her participation in the rally.

CONFIDENTIAL
Pursuant to Tex. Occ.
Code § 1701.454

that the preponderant evidence establishes that untruthfulness was not the reason for Petitioner's separation from Sheriff's Office.

The next issue to be determined is whether Petitioner committed criminal misconduct as alleged. Captain Von Maldau admitted that Petitioner was not terminated for any specific criminal conduct and stated that she might have "potentially" committed criminal conduct during the rally. Sheriff's Office carries the burden of proving the alleged criminal misconduct occurred. Sheriff's Office presented no documentation or testimony to prove any alleged criminal misconduct. Therefore, Sheriff's Office failed to provide sufficient evidence that Petitioner committed criminal misconduct.

As Petitioner's alleged criminal misconduct or untruthfulness were not established as the cause for the separation, the ALJ concludes that the F-5 designation of dishonorable discharge should be changed.

B. **Alleged Policy and Civil Service Rules Violations**

Alternatively, Sheriff's Office argued that Petitioner violated Policy and Civil Service Rules when she participated in the rally, posted photos of the rally on her Facebook page, and did not report observed incidents, crimes, and non-compliance. To prevail, Sheriff's Office must show, by a preponderance of the evidence, that Petitioner was terminated in relation to a disciplinary investigation

of conduct that is not included in the definition of dishonorably discharged and that the conduct occurred.[27]

Because Sheriff's Office relied on the prior arbitration proceeding to show that Petitioner's termination meets the standard for the general discharge designation, the next issue to be determined is whether Petitioner's request for an honorable discharge designation should be denied based on collateral estoppel.[28] The purpose of collateral estoppel is to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the re-litigation of issues.[29] A party seeking to assert the bar of collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment; and (3) the parties were cast as adversaries in the first action.[30]

Whether to apply collateral estoppel is a question of law,[31] and the judge in the second proceeding has discretion to determine whether to allow a party to use collateral estoppel offensively.[32] Collateral estoppel can apply to administrative

---

[27] Tex. Occ. Code § 1701.452(b)(2)(A).

[28] Respondent did not file any briefing, as ordered by the ALJ, to present its argument for the alleged policy violations but offered Exhibits 1, 2, and 3, containing the arbitrator's decision and the transcript of the arbitration proceedings.

[29] *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628-29 (Tex. 1992).

[30] *Allen v. McCurry*, 449 U.S. 90, 94-95 (1980); *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994).

[31] *James v. City of Houston*, 138 S.W.3d 433, 437 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

[32] *Goldstein v. Commission for Lawyer Discipline*, 109 S.W.3d 810, 812 (Tex. App.—Dallas 2003, pet. denied).

CONFIDENTIAL
Pursuant to Tex. Occ.
Code § 1701.454

agency orders when the agency is acting in a judicial or quasi-judicial capacity and resolves disputed issues of fact properly before it.[33] Further, whether a factual finding in a prior administrative proceeding creates a collateral bar in a second proceeding is determined on a case-by-case basis.[34] Even if the other elements of collateral estoppel are met, offensive use of collateral estoppel should not be applied if it would be unfair.[35]

The parties to this case were adversaries in the arbitration proceeding before the arbitrator. Both parties were represented by counsel. Witnesses testified under oath and were subject to cross-examination. Documentation was entered into evidence, and parties were permitted to file post-hearing briefs. The arbitration was transcribed by a court reporter.[36] Petitioner had an incentive to fully and vigorously present her case.

Petitioner was terminated due to her alleged violations of Policy and Civil Service Rules. In this SOAH case, a general discharge is appropriate if the violations—the alleged misconduct—occurred.[37] In the arbitration proceeding, the issue was whether Petitioner violated Policy and Civil Service Rules discussed in Section V of the Decision and Award. The arbitrator considered the testimony and

---

[33] *Muckelroy v. Richardson School Dist.*, 884 S.W.2d 825, 830 (Tex. App.—Dallas 1994, writ denied).

[34] *State v. Aguilar*, 947 S.W.2d 257, 259 (Tex. Crim. App. 1997).

[35] *Phillips v. Allums*, 882 S.W.2d 71, 75 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

[36] *See* Resp. Exs. 1, 2, 3.

[37] Tex. Occ. Code § 1701.4525(e).

CONFIDENTIAL
Pursuant to Tex. Occ.
Code § 1701.454

evidence presented and concluded that Petitioner's conduct had in fact violated Policy and Civil Service Rules set out above, and that the termination should be upheld.[38]

The relevant issue in this case is identical to the issue considered by the arbitrator and was essential to his decision. Furthermore, Texas courts have consistently recognized arbitration awards as satisfying the requirement of full and fair litigation, so long as the issue was actually decided in the process of arbitration and resolving the issue was necessary for the arbitration award. An arbitration award is conclusive on the parties as to all matters of fact and law submitted to the arbitrator because the award has the effect of a judgment of a court of last resort.[39] Finally, the arbitrator's decision is final and binding on the parties.[40] Therefore, there is no basis for finding that the application of collateral estoppel would be unfair.

Under these circumstances, the ALJ finds that the requirements of collateral estoppel are met and that Petitioner is collaterally estopped from challenging the decision of the arbitrator. Therefore, there is no genuine issue of material fact that Petitioner violated Policy 5.24 (Conduct Unbecoming an Officer), 5.45 (Bringing Discredit), 6.11 (Reporting Crimes), 6.12 (Reporting Incidents), 6.16 (Reporting Non-Compliance), and 37.07 (Social Media Scope) and Civil Service Rules

---

[38] *See* Resp. Ex. 1.

[39] *Zea v. Valley Feed & Supply, Inc.*, 354 S.W.3d 873 (Tex. App.—El Paso 2011, pet. dism'd).

[40] Tex. Loc. Gov't Code § 143.057(c).

CONFIDENTIAL
Pursuant to Tex. Occ.
Code § 1701.454

9.02.M (Violation of any statute, Civil Service rule, regulation or Commission order) and 9.02.P (Conduct which has proven to be detrimental or has an adverse effect on the Sheriff's Office). Petitioner was ultimately terminated for these violations, which meet the definition of a general discharge because they are related to a disciplinary investigation of conduct that is not included in the definition of dishonorably discharged.[41]

### C. Conclusion

Sheriff's Office did not establish misconduct occurred which would support a dishonorable discharge. However, it proved by a preponderance of the evidence that Petitioner engaged in misconduct not included in the definition of dishonorably discharged—i.e., the violations of Sheriff Office's Policy and Civil Service Rules as determined by the arbitrator. Therefore, Petitioner's F-5 Report should be changed to reflect a general discharge. In support of this decision, the ALJ makes the following findings of fact and conclusions of law.

### V. Findings of Fact

1. Roxanne Mathai (Petitioner) was employed by the Bexar County Sheriff's Office (Sheriff's Office) from approximately August 27, 2012, until June 11, 2021, when she was terminated from employment.

---

[41] Tex. Occ. Code § 1701.452(b)(2)(A).

<div style="text-align:right">
**CONFIDENTIAL**
Pursuant to Tex. Occ.
Code § 1701.454
</div>

2. Sheriff's Office filed an F-5 Report of Separation of Licensee (F-5 Report) with the Texas Commission on Law Enforcement (TCOLE), designating Petitioner's separation as a dishonorable discharge.

3. Petitioner timely petitioned to change the F-5 Report to reflect an honorable discharge. At the hearing and in her closing brief, Petitioner stated that, in the alternative, she would accept a general discharge designation.

4. TCOLE referred the case to the State Office of Administrative Hearings (SOAH). TCOLE issued a notice of hearing advising Petitioner and Sheriff's Office that the matter would be the subject of a hearing before a SOAH Administrative Law Judge (ALJ).

5. On May 13, 2022, an ALJ issued Order No. 3 in this case, setting the matter for hearing by Zoom videoconference on June 28, 2022.

6. Together, the TCOLE notice and Order No. 3 advised the parties of the time, place, and nature of the hearing; the legal authority and jurisdiction under which the hearing was to be held; a reference to the particular sections of the statutes and rules involved; and a short, plain statement of the factual matters asserted or an attachment that incorporated by reference the factual matters asserted in the complaint or petition filed with the state agency.

7. The hearing convened via Zoom videoconference on June 28, 2022, before ALJ Katerina DeAngelo of SOAH. Petitioner appeared and was represented by attorney Mark Anthony Sanchez. Sheriff's Office was represented by the assistant criminal district attorney Susan A. Bowen. The record closed on August 9, 2022, to allow for the parties to file written closing briefs.

8. The ALJ took official notice of the administrative record filed by TCOLE, which included the referral of petition, the F-5 Report filed in this case, the petition to correct separation of licensee report, a reference to the issues involved, and the law that governs this proceeding.

9. Petitioner faced disciplinary action for violations of Sheriff's Office's policies and procedures, including the untruthfulness policy, in relation to Petitioner's failure to immediately report her relationship with an inmate to

CONFIDENTIAL
Pursuant to Tex. Occ.
Code § 1701.454

her supervisor in October 2020. On June 2, 2021, the parties entered into an Agreed Order of Suspension to resolve the violations.

10. Petitioner was terminated in relation to her participation in a political rally in Washington, D.C., that took place on January 6, 2021. Petitioner posted photographs and videos of rioters climbing the walls of the U.S. Capitol building on her personal Facebook page.

11. Sheriff's Office's Internal Affairs (IA) investigated Petitioner's participation in the rally, found no violations of law and no engagement in criminal conduct, but sustained violations of Sheriff's Office's policies and procedures (Policy) 5.24, 5.45, 6.11, 6.12, 6.16, and 37.07 and the Bexar County Sheriff's Civil Service Commission's rules (Civil Service Rules) 9.02.M and 9.02.P.

12. Policy 5.24 (Conduct Unbecoming an Officer) states that a Deputy Sheriff shall always conduct themself in a manner which reflects most favorably on Sheriff's Office, whether on duty or off-duty status. Unbecoming conduct includes unjustified behavior which brings Sheriff's Office into disrepute, discredits a member of Sheriff's Office, impairs the operation of Sheriff's Office, or has an adverse effect on Sheriff's Office.

13. Policy 5.45 (Bringing Discredit) states that employee shall not act or behave publicly or privately in such a manner as to bring discredit, distrust, or lack of esteem upon themselves personally as a peace officer or corrections officer, or upon Sheriff's Office as a whole.

14. Policy 6.11 (Reporting Crimes) states that it is the responsibility of all employees to report to their supervisor any information relative to a criminal offense, of which they have direct or indirect knowledge. Employees with personal knowledge of, or having information relative to a criminal offense shall not conceal, ignore, distort, or retain such facts.

15. Policy 6.12 (Reporting Incidents) states that employees shall immediately report to their supervisors any conditions that might endanger the public health or safety.

CONFIDENTIAL
Pursuant to Tex. Occ.
Code § 1701.454

16. Policy 6.16 (Reporting Non-Compliance) states that employees who have actual knowledge of, witness, or reasonably perceive any form of non-compliance with law or unethical behavior shall report such behavior as soon as possible.

17. Policy 37.07 (Social Media Scope) states that personnel are strongly encouraged to show discretion involving the content, message, and information posted on their personal social media accounts. All information posted is open to the public and may be used against the employee or agency to bring discredit. Posted content that is found to be derogatory or which may have an adverse effect on Sheriff's Office may result in disciplinary action up to and including termination.

18. Civil Service Rule 9.02.M states that a violation of any statute, Civil Service Rule, regulation or Commission order may cause written reprimand, suspension, demotion, or dismissal.

19. Civil Service Rule 9.02.P states that conduct which has proven to be detrimental or has an adverse effect on Sheriff's Office may cause written reprimand, suspension, demotion, or dismissal.

20. On June 11, 2021, Petitioner was terminated from her employment with Sheriff's Office for violations of the Policy and Civil Service Rules in relation to her participation in the rally.

21. Petitioner appealed the termination and, on August 25-26, 2021, the parties participated in arbitration.

22. Sheriff's Office and Petitioner were adversaries in the proceeding before the arbitrator. Petitioner was represented by counsel, and parties were given a full opportunity to present testimony and evidence.

23. The arbitrator upheld the termination and found that Petitioner violated Policy 5.24, 5.45, 6.11, 6.12, 6.16, and 37.07, and Civil Service Rules 9.02.M and 9.02.P.

CONFIDENTIAL
Pursuant to Tex. Occ.
Code § 1701.454

24. Sheriff's Office did not present testimony or credible evidence to prove that Petitioner's termination was based on untruthfulness.

25. Sheriff's Office did not present testimony or credible evidence to prove that criminal misconduct occurred.

26. The facts and issues in this case—whether Petitioner engaged in misconduct that violated Policy and Civil Service Rules—are identical to the facts and issues considered by the arbitrator and were essential to his decision.

27. The evidence in the record establishes that Petitioner was terminated from her employment based on a disciplinary investigation into her violation of Policy 5.24 (Conduct Unbecoming an Officer), 5.45 (Bringing Discredit), 6.11 (Reporting Crimes), 6.12 (Reporting Incidents), 6.16 (Reporting Non-Compliance), and 37.07 (Social Media Scope) and Civil Service Rules 9.02.M (Violation of any statute, Civil Service rule, regulation or Commission order) and 9.02.P (Conduct which has proven to be detrimental or has an adverse effect on the Sheriff's Office).

## VI. CONCLUSIONS OF LAW

1. TCOLE has jurisdiction over this matter. Tex. Occ. Code ch. 1701.

2. SOAH has jurisdiction over all matters relating to the hearing in this case, including the authority to issue a final order. Tex. Gov't Code ch. 2003; Tex. Occ. Code ch. 1701; 37 Tex. Admin. Code § 217.8(d).

3. Proper and timely notice of the hearing was provided. Tex. Gov't Code §§ 2001.051-.052.

4. A person subject to an F-5 Report may contest information contained in it by submitting a petition for correction of the F-5 Report to the law enforcement agency and TCOLE. Tex. Occ. Code § 1701.4525(a).

5. Upon receipt of a petition, TCOLE is required to refer the matter to SOAH for a hearing. Tex. Occ. Code § 1701.4525; 37 Tex. Admin. Code § 217.8(c).

> **CONFIDENTIAL**
> Pursuant to Tex. Occ.
> Code § 1701.454

6. At the hearing, the law enforcement agency's chief administrative officer bears the burden to support a dishonorable discharge designation through proving, by a preponderance of the evidence, that the alleged criminal misconduct occurred. Tex. Occ. Code § 1701.4525(e); 37 Tex. Admin. Code § 217.8(d).

7. Following the hearing, the ALJ issues a final order. 37 Tex. Admin. Code § 217.8(d).

8. If the alleged misconduct is not supported by a preponderance of the evidence, the ALJ shall order TCOLE to change the F-5 Report. Tex. Occ. Code § 1701.4525(e); 37 Tex. Admin. Code § 217.8(e).

9. Sheriff's Office did not meet its burden of proving that Petitioner committed criminal misconduct. Tex. Occ. Code §§ 1701.452(b)(3)(A), .4525(e).

10. A party seeking to assert the bar of collateral estoppel must establish: (1) that the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment; and (3) the parties were cast as adversaries in the first action. *Allen v. McCurry*, 449 U.S. 90, 94-95 (1980); *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994); *Zea v. Valley Feed & Supply, Inc.*, 354 S.W.3d 873 (Tex. App.—El Paso 2011, pet. dism'd).

11. Under Texas Local Government Code section 143.057(c), the arbitrator's decision is final and binding on the parties.

12. The requirements for collateral estoppel are met in this case.

13. Sheriff's Office established that Petitioner's separation was based on a disciplinary investigation into Petitioner's violation of Policy and Civil Service Rules and that the alleged misconduct occurred.

14. Petitioner's F-5 Report should be changed to reflect a general discharge. Tex. Occ. Code §§ 1701.452(b)(2)(A), .4525(e).

> **CONFIDENTIAL**
> Pursuant to Tex. Occ.
> Code § 1701.454

## VII. ORDER

The F-5 Report of Separation of Licensee submitted to TCOLE by the Bexar County Sheriff's Office for Roxanne Mathai shall be changed to reflect a general discharge.

**SIGNED: AUGUST 26, 2022.**

ALJ Signature:

_Katerina DeAngelo_

Katerina DeAngelo
Presiding Administrative Law Judge