UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ROXANNE MICHELE MATHAI,<br><br>    *Plaintiff*,<br><br>v.<br><br>BEXAR COUNTY, TEXAS, JAVIER SALAZAR,<br><br>    *Defendants*. | §<br>§<br>§<br>§  Civil Action No. SA-22-CV-01355-XR<br>§<br>§<br>§<br>§<br>§ |

## ORDER

On this date, the Court considered Defendants' motion to dismiss (ECF No. 7) and Plaintiff's response (ECF No. 10), as well as arguments made by both parties at the hearing on May 4, 2023, Defendants' post-hearing supplemental briefing (ECF No. 19), and Plaintiff's post-hearing supplemental briefing (ECF No. 20). After careful consideration, the Court issues the following order.

## BACKGROUND

This case arises out of the employment termination of Plaintiff Roxanne Mathai by Defendant Javier Salazar, the Sheriff of Bexar County. Plaintiff alleges she was wrongfully discharged after she attended President Trump's political rally in Washington, D.C. on January 6, 2021. ECF No. 1 ¶ 14.

At the time of her discharge, Plaintiff had been a Lieutenant with nine years of service as a Texas County Jailer working under the supervision of Defendant Salazar. *Id.* ¶ 12. She is a self-proclaimed "ardent and passionate supporter of President Donald J. Trump and his 'Make America Great' ('MAGA') political movement." *Id.* ¶ 13.

1

On January 3, 2021, Ms. Mathai sought and received permission from Assistant Chief Deputy Janssen to travel to Washington, D.C. to attend a political rally in support of President Trump. *Id*. ¶ 14. In her complaint, she alleges the following:

> Believing she was a witness to history and wanting to create a record for posterity, she began posting photographs, videos, and comments on social media, including her personal Facebook page, in political support of and in association with President Trump. Ms. Mathai also began walking the approximate two-mile distance from Ellipse Park to the United States Capitol Building with her friends and continued to post photos, videos, and comments on Facebook. Ms. Mathai proudly and unapologetically voiced and displayed her lawful and constitutionally protected support of President Trump in person and through social media. She arrived at the outskirts of the United States Capitol Building complex and enjoyed the sights and sounds of the rally. Standing on the street, sidewalk, and on the grassy lawn area outside the United States Capitol Building complex, Ms. Mathai continued to take photos and record videos of her experiences.

*Id*. ¶ 16. Plaintiff alleges that Defendant Salazar learned of her political speech and association on January 7, 2021 by surveilling and monitoring her personal Facebook page. *Id*. ¶ 19. Thereafter, Salazar commenced an Internal Affairs Investigation into Plaintiff and authorized the issuance of a Notification of Allegations to Plaintiff for violating the following disciplinary rules:

1. 5.24 Conduct Unbecoming an Officer;
2. 5.44 Violations of Law;
3. 5.45 Bringing Discredit;
4. 6.11 Reporting Crimes;
5. 6.12 Reporting Incidents;
6. 6.16 Reporting Non-Compliance; and
7. 37.07 Social Media Scope.

*Id*. ¶ 20.

On January 29, 2021, Plaintiff was issued a Garrity Warning and questioned about the allegations against her. A Written Report for Administrative Investigation was prepared and provided to Defendant Salazar. *Id*. ¶ 21.

Defendant Salazar thereafter issued his Order of Dismissal to Plaintiff, dishonorably discharging her from employment on May 28, 2021, for violating statutes, Civil Service Rules, and Commission Rules, engaging in conduct unbecoming of an officer, failing to report crimes, failing to report non-compliance, and violating social media policies. *Id*. ¶ 22.

At the time of her discharge, Plaintiff Mathai was a member of the Deputy Sheriff's Association of Bexar County, a labor union, and was therefore subject to the Collective Bargaining Agreement between the Deputy Sheriff's Association of Bexar, the Sheriff of Bexar County, and the County of Bexar, Texas. In relevant part, the Collective Bargaining Agreement holds that:

> A Member may appeal a dismissal or demotion to the Sheriff's Civil Service Commission in accordance with the Rules of the Bexar County Sheriff's Civil Service Commission. . . . A Member's appeal of his/her dismissal or demotion may be heard by an Arbitrator as set out below. A Notice of Appeal requesting arbitration by the Member stating the grounds for the appeal and a request by the Association that the Member's appeal be heard by an arbitrator must be filed with the Bexar County Sheriff's Civil Service Commission and the Sheriff's Human Resource Office within ten (10) business days of the Member's receipt of the final Order of dismissal or demotion.

ECF No. 7-1 (Collective Bargaining Agreement Article 19: Discipline / Investigations, Section 6: Appeals).

Plaintiff Mathai, in timely compliance with Article 19, elected to participate in arbitration concerning her termination of employment. ECF No. 1-7 at 142–299 (Arbitration Transcript). The Arbitrator's scope was limited to the following issues: 1) Did Lt. Roxanne Mathai violate the Civil Service Rules? 2) If so, was there just cause to support the disciplinary action imposed upon Lt. Mathai? *Id*. at 124 (Arbitrator's Decision and Award). The Arbitrator upheld the termination of Plaintiff's employment, issuing a Decision and Award denying Plaintiff's appeal for reinstatement on December 21, 2021. *Id*. at 123–41.

On March 10, 2022, Plaintiff submitted a Petition to Correct Separation of Licensee Report to the State Office of Administrative Hearings ("SOAH") to order that Defendant Salazar amend the Separation of Licensee (Form F-5) to reflect an "Honorable Discharge" because she separated employment in good standing. ECF No. 1. ¶ 25. On August 26, 2022, an administrative law judge issued a Decision and Order, holding that "[Salazar] did not establish misconduct occurred which would support a dishonorable discharge. . . . Therefore, Petitioner's F-5 Report should be changed to reflect a general discharge." *Id*. ¶ 27.

Plaintiff brings claims against Defendants Salazar and Bexar County for violations of the First Amendment of the United States Constitution, as well as violations of the Fourteenth Amendment and 42 U.S.C. § 1983 for retaliatory discharge because of free speech and association and violations of her liberty interest in employment. *Id*. at 11–16. More specifically, she contends that Defendant Salazar "issued a false and unsubstantiated Order of Dismissal to [Plaintiff] terminating her on manufactured and false violations" of various Bexar County Sheriff's Civil Service Commission rules. ECF No. 20 at 1–2.

Defendants filed a motion to dismiss for lack of subject matter jurisdiction on February 17, 2023. ECF No. 9. Plaintiff responded on March 17, 2023. ECF No. 10. At the hearing held on May 4, 2023, the Court directed both parties to file supplemental briefing on the issue of the Court's jurisdiction in light of the arbitration provision in the Collective Bargaining Agreement. *See* ECF Nos. 19, 20.

## DISCUSSION

### I.   Legal Standard

Defendants move the Court to dismiss this case for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure Rule 12(b)(1). Dismissal is proper under Rule 12(b)(1)

"when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). A federal court must consider a motion to dismiss for lack of subject matter jurisdiction "before other challenges 'since the court must find jurisdiction before determining the validity of the claim.'" *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (quoting *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 450 (6th Cir. 1988)).

The party seeking to invoke the power of the court "bears the burden of establishing jurisdiction, but is required to present only *prima facie* evidence." *Pervasive Software, Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 219 (5th Cir. 2012) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006)). In deciding a motion to dismiss pursuant to Rule 12(b)(1), the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts, plus the Court's resolution of disputed facts. *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). When a motion to dismiss is based on the lack of jurisdiction on the face of the complaint, the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised—the court will consider the allegations in the plaintiff's complaint as true. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).

I. **Analysis**

In their motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction, Defendants argue that Plaintiff Mathai "elected her remedy concerning her termination of employment when she requested Arbitration for her discipline." ECF No. 7 ¶ 4. Defendants argue Plaintiff's complaint is subject to dismissal because the Collective Bargaining Agreement between the Deputy Sheriff's Association of Bexar, the Sheriff of Bexar County, and the County of Bexar,

Texas governs. *Id*. ¶ 8. Defendants cast Plaintiff's federal complaint as a second bite at the apple and an effort to overturn the arbitrator's decision. *Id*. ¶ 14.

In her response, Plaintiff contends that the arbitrator was authorized to narrowly determine "which particular charges he/she finds to be true" and to determine "the particular rules he/she finds such conduct to have violated" but not to "look beyond the Order of Disciplinary Action[.]" ECF No. 10 at 3. The narrow issues decided upon by the arbitrator in this matter related to whether Plaintiff Mathai 1) violated the Civil Service Rules and 2) if so, whether there was just cause to support the disciplinary action imposed upon her. *Id*. Plaintiff further contends that "[t]he sole remedy an arbitrator can deliver is reinstatement." *Id*. Finally, Plaintiff specifically contends that the Supreme Court's decision in *McDonald v. City of W. Branch, Mich.* governs. In that case, the Court held that in a § 1983 action was not barred by a previous arbitration award, finding "the doctrines of res judicata and collateral estoppel inapplicable in this § 1983 action." 466 U.S. 284, 289 (1984).

Both parties submitted supplemental briefing on the issue of whether the Collective Bargaining Agreement and the prior arbitration deprive this Court of subject matter jurisdiction over Plaintiff's claims. *See* ECF Nos. 19, 20.

Plaintiff and Defendants both address the impact of *14 Penn Plaza v. Pyett* in their supplemental briefing. In that case, the Supreme Court held that the collective bargaining agreement at issue "clearly and unmistakably requires respondents to arbitrate the age-discrimination claims at issue[.]" 556 U.S. 247, 260 (2009). The collective bargaining agreement in that case specifically held:

> There shall be no discrimination against any present or future employee by reason of race, creed, . . . or any other characteristic protected by law, including, but not limited to, claims made pursuant to . . . the Age Discrimination in Employment Act [ADEA], the New

6

> York State Human Rights Law, . . . or any other similar laws, rules, or regulations. All such claims shall be subject to the grievance and arbitration procedures . . . as the sole and exclusive remedy for violations.

*Id*. at 252. The Court found that language signified clear and unmistakable intent by the parties to resolve ADEA claims exclusively by arbitration. *Id*.

Of particular significance to the Court is *Penn Plaza*'s discussion of *McDonald*, *Gardner-Denver*, and *Barrentine*, three prior Supreme Court decisions that *Penn Plaza* did not overturn. *Penn Plaza* distinguished these cases because they did not involve collective bargaining agreements that clearly and unmistakably governed the resolution of statutory claims exclusively by arbitration. The *Penn Plaza* decision noted that "the arbitration provision under review in *Barrentine* did not expressly reference the statutory claim at issue." *Id*. at 263 (citing *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 731 n.5 (1981)). In discussing *Gardner-Denver*, *Penn Plaza* again distinguished the collective-bargaining agreement at issue, noting that the *Gardner-Denver* arbitrator had the "authority to resolve only questions of contractual rights" and not statutory rights. *Penn* Plaza, 556 U.S. at 262 (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 53 –54 (1974)). Finally, in discussing *McDonald*, *Penn Plaza* again distinguished its holding from the outcome in *McDonald* as being dependent on a clear and unmistakable intent for arbitration to cover the statutory claims at issue, which was not found in the *McDonald* collective bargaining agreement that made no mention of § 1983 claims. *Penn Plaza*, 556 U.S. at 263 (discussing *McDonald*, 466 U.S. at 284). This line of Supreme Court cases, along with more recent Fifth Circuit precedent interpreting and applying the "clear and unmistakable" standard from *Penn Plaza*, guides our analysis.

In *Ibarra v. United Parcel Service*, the Fifth Circuit held that the various provisions of the collective bargaining agreement at issue in the case did not require the plaintiff to submit her Title

7

VTI claim to the grievance process. 695 F.3d 354, 360 (5th Cir. 2012). Importantly, the Court held that "for a waiver of an employee's right to a judicial forum for statutory discrimination claims to be clear and unmistakable, the CBA [collective bargaining agreement] must, at the very least, identify the specific statutes the agreement purports to incorporate or include an arbitration clause that explicitly refers to statutory claims." *Id*. at 359–60.

In *Gilbert v. Donahoe*, the Fifth Circuit was tasked with analyzing a collective bargaining agreement and whether it clearly and unmistakably required the plaintiff to submit her FMLA and Rehabilitation Act claims to arbitration. 751 F.3d 303, 310 (5th Cir. 2014). The Court held that the collective bargaining agreement, in its section addressing grievances, did not explicitly reference any statutory claims, "let alone claims under the FMLA or the Rehabilitation Act." *Id*. In some material incorporated into the collective bargaining agreement, however, both the FMLA and the Rehabilitation Act were explicitly referenced. *Id*. The Court therefore viewed the collective bargaining agreement at issue to fall somewhere between *Penn Plaza*, where the collective bargaining agreement was held to clearly and unmistakably require the plaintiff to submit her statutory claims to arbitration, with the other cases the Supreme Court has found to be insufficiently clear and unmistakable, where the collective bargaining agreements did not prevent plaintiffs' claims to be brought in a federal judicial forum. *See, e.g.*, *Barrentine, Gardner-Denver*, and *McDonald* (discussed *supra*).

Even after finding that the agreement explicitly mentioned the FMLA, the *Gilbert* Court still held that the agreement did not clearly and unmistakably require the plaintiff to bring her FMLA claims through the grievance and arbitration process outlined in the agreement (instead finding that the Employee Labor Relations Manual, while incorporated into the collective bargaining agreement, merely provided policies to comply with the FMLA and therefore did not

clearly and unmistakably bar the plaintiff's access to federal court for FMLA claims). *Gilbert*, 751 F.3d at 310.

In its supplemental briefing, Defendants' main argument boils down to the following: the Bexar County Sheriff's Civil Service Rules expressly provides that a grievance may be filed by an eligible employee for discrimination based on political affiliation.[1] Defendants argue, therefore, that political affiliation is not listed among the types of discriminatory allegations where arbitration is waived because a specific grievance process in place provides a remedy to discrimination based on political affiliation.[2] This failure to list political affiliation among the types of discrimination where arbitration is waived is intentional, Defendants argue, and the intent of the parties entering into the Collective Bargaining Agreement was therefore to have discrimination based on political affiliation resolved by arbitration.

In summary, Defendants contend that reading Chapter X of the Grievance System Procedures and Article 5 of the Collective Bargaining Agreement together result in a situation wherein "the Bexar County Sheriff's Civil Service Rules clearly state that grievances concerning political affiliation must be done under the Rules of the Bexar County Sheriff's Civil Service." ECF No. 19 at 3. Pursuant to *Penn Plaza*, Defendants hold that the Collective Bargaining Agreement at issue here specifically and intentionally waived the right to litigate certain federal claims, including those based on discrimination because of political affiliation, because an

---

[1] *See* ECF No. 19 at 9 (Rules of Bexar County Sheriff's Civil Service Commission Chapter X – Grievance System Procedures) ("A grievance may be filed by an eligible employee on one or more of the following grounds: . . . political affiliation").

[2] *See* ECF No. 7-1 at 9 (Collective Bargaining Agreement Article 5: Non-Discrimination) ("The County agrees not to discriminate against any employee for their lawful activity on behalf of, or membership in the Association. Nothing in this Agreement shall interfere with any employee's right to pursue allegations of discrimination based on race, creed, color, national origin, religion, age, sex/gender, genetic information, or disability under federal or state law.")

employee must resolve those claims for discrimination based on political affiliation through the Civil Service Rule's grievance process.

The Court disagrees with Defendants' argument. First, neither the Collective Bargaining Agreement nor the Civil Service Rules identify or explicitly refer to §1983 claims or any statutory claims at all. There is simply no clear and unmistakable intent captured in either agreement that Plaintiff must submit her statutory claims, including claims pursuant to 42 U.S.C. § 1983 against Defendants for retaliatory discharge, given the lack of any mention whatsoever of § 1983.

 Second, that an employee *may* file a grievance on the basis of discrimination because of political affiliation in no way signifies that arbitration is the exclusive forum to resolve a statutory claim such as the one at issue here or that an employee *must* do so (as Defendants argue).

The Collective Bargaining Agreement is nowhere near as specific as the agreements discussed in *Gilbert* or *Penn Plaza* and fails the "clear and unmistakable test." Defendants would have the Court infer from the failure to mention political affiliation among the grounds where arbitration is waived as evidence of "clear and unmistakable" intent to resolve § 1983 claims exclusively by arbitration. This waiver argument, however, in the absence of any mention of resolution of statutory claims such as § 1983 claims, is not nearly strong enough evidence to deprive Plaintiff of her right to bring her statutory claims in a federal judicial forum.

In conclusion, because neither the Collective Bargaining Agreement nor any agreements incorporated therein include an arbitration clause that explicitly refers to a § 1983 statutory claim (or any statutory right whatsoever), the Collective Bargaining Agreement cannot be held to have waived Plaintiff's rights to bring her § 1983 claim in a federal judicial forum.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's first amended complaint is **DENIED**. Plaintiff's claims for violations of First Amendment of the United States Constitution, as well as violations of the Fourteenth Amendment and 42 U.S.C. § 1983 for retaliatory discharge, remain pending.

It is so **ORDERED**.

**SIGNED** May 15, 2023.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE